# Exhibit 1

**DISTRICT OF COLUMBIA**
**OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION**
Office of Dispute Resolution
1050 First Street, NE, 3rd Floor
Washington, DC  20002

_____

| | | |
|---|---|---|
| GUARDIAN, on behalf of STUDENT,[1] | ) ) ) | |
| | ) | Date Issued: November 29, 2024 |
| Petitioner, | ) ) | Hearing Officer: Peter B. Vaden |
| v. | ) ) | Case No: 2024-0135 |
| | ) ) | Online Video Conference Hearing |
| PUBLIC CHARTER SCHOOL | ) ) | Hearing Dates: November 12, 13 and 15, 2024 |
| Respondent. | ) ) | |

**HEARING OFFICER INTERIM DECISION AND ORDER**

**INTRODUCTION AND PROCEDURAL HISTORY**

This matter came to be heard upon the Administrative Due Process Complaint Notice filed by the Petitioner (GUARDIAN) under the Individuals with Disabilities Education Act, as amended (the IDEA), 20 U.S.C. § 1400, *et seq*., and Title 5-E, Chapter 5-E30 of the District of Columbia Municipal Regulations ("D.C. Regs.").  In her due process complaint, Petitioner alleges that STUDENT has been denied a free appropriate public education (FAPE) by the failure of Respondent PUBLIC CHARTER SCHOOL (PCS) to evaluate Student for special education eligibility from the first quarter of the 2019-2020 school year until May 2024.

Petitioner's Due Process Complaint, filed on July 19, 2024, named PCS as Respondent.  The undersigned hearing officer was appointed on July 22, 2024.  On

_____

[1]    Personal identification information is provided in Appendix A.

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

August 5, 2024, PCS file a partial motion to dismiss asserting that the hearing officer did not have jurisdiction over claims asserted by Petitioner under Section 504 of the Rehabilitation Act of 1973 (Section 504) and under the Americans with Disabilities Act (ADA). Also, on August 5, 2024, I convened a telephone prehearing conference with counsel to discuss the issues to be determined, the hearing date and other matters. After receiving argument at the prehearing conference, I granted PCS' motion to dismiss Petitioner's Section 504 and ADA claims for want of subject matter jurisdiction in the hearing officer. PCS also sought dismissal of Petitioner's claims regarding acts or omissions which allegedly occurred more than two years preceding the filing date of the due process complaint. I denied this motion because the statute of limitations is an affirmative defense which should be established at the due process hearing - not in a prehearing motion to dismiss. On August 21, 2024, the parties met for a resolution session, but did not reach an agreement to resolve the case.

By order issued September 17, 2024, I granted Petitioner's unopposed motion to continue the hearing date in this case to November 12, 2024 due to the Guardian's unavailability on the previously scheduled date and to extend the final decision due date from October 2, 2024 to December 6, 2024.

The hearing, which was closed to the public, was convened online before the undersigned impartial hearing officer on November 12, 13 and 15, 2024. With consent of the parent, the hearing officer hosted the hearing on the Microsoft Teams videoconference platform and made an audiovisual recording. Petitioner appeared

2

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

online for the hearing and was represented by PETITIONER'S COUNSEL and

PETITIONER'S CO-COUNSEL.  Respondent PCS was represented by PCS' COUNSEL

and by SPECIAL EDUCATION DIRECTOR.

Petitioner's Counsel made an opening statement.  Guardian testified and called as

additional witnesses EDUCATIONAL ADVOCATE 1, EDUCATIONAL ADVOCATE 2 and

EDUCATIONAL ADVOCATE 3.  PCS called PCS SPECIAL EDUCATION CONSULTANT

as its only witness.  Petitioner's Exhibits P-1 through P-83 were admitted into evidence,

including Exhibit P-83 admitted over PCS' objection.  PCS' Exhibits R-9, R-11, R-15, R-

28, R-32 and R-36 were admitted into evidence without objection.  At the conclusion of

the taking of evidence, Petitioner's attorneys and PCS' Counsel made oral closing

arguments.

## JURISDICTION

The hearing officer has jurisdiction under 20 U.S.C. § 1415(f) and D.C. Regs. tit.

5-E, § 3029.

## ISSUES AND RELIEF SOUGHT

The sole issue for determination in this case, as certified in the August 13, 2024

Prehearing Order, is:

Whether PCS denied Student a FAPE when it failed to evaluate Student for
special education eligibility after fall 2018, beginning after the first quarter of the
2019-2020 school year, until May 2024.

For relief Petitioner requests that the hearing officer order PCS to provide

Student compensatory education for the denial of FAPE alleged in the complaint and

3

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

order such other relief the hearing officer determines appropriate.

The Petitioner previously asserted additional claims – alleged inappropriateness of a May 29, 2024 IEP and failure to conduct a functional behavior assessment and create an behavior intervention plan.  By order issued November 17, 2024, I granted Petitioner's request to dismiss those claims without prejudice.

## **FINDINGS OF FACT**

After considering all of the evidence received at the due process hearing in this case, as well as the argument and legal memoranda of counsel, my findings of fact are as follows:

1.      Student, an AGE child, resides in the District of Columbia with Guardian. Guardian is a maternal aunt and has been the child's guardian since May 2014. Testimony of Guardian.

2.      Student currently attends PCS, where Student is in GRADE.  Testimony of Guardian.

3.      On April 29, 2024, PCS found Student eligible for special education under the IDEA disability classifications Other Health Impairment (OHI) and Specific Learning Disability (SLD).  Exhibit P-6.

4.      Student was evaluated by District of Columbia Public Schools' (DCPS) Early Stages Diagnostic Center in October 2016.  At that time, the Early Stages evaluator reported that Student did not present with any significant delay in his/her development, with the exception of his/her social-emotional functioning (primarily in the home

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

setting).  The evaluator reported that Student did not then require special education services to access or progress in the general education curriculum.  Exhibit P-37.  DCPS determined that Student did not meet eligibility criteria for special education services. Exhibit P-20.

5.    Student has been enrolled in PCS since the 2017-2018 school year.  Prior to enrolling in PCS, Student attended EARLY LEARNING CENTER.  At Early Learning Center, Student received early intervention services, including a Behavior Intervention Plan (BIP) and Applied Behavior Analysis (ABA) therapy.  Testimony of Guardian.

6.    When Guardian enrolled Student at PCS, Guardian informed Student's teachers that the child was struggling with behaviors and asked if the Early Learning Center BIP would continue at PCS.  The teachers at PCS responded that Student's behavior issue was a phase and they should wait to see if the child would outgrow it. Testimony of Guardian.

7.    After Student enrolled in PCS, his/her behavior issues continued and got worse.  The behaviors included yelling, disrupting class and laughing and singing inappropriately in class.  Guardian asked Student's teachers whether Student needed to be "tested".  The teachers told Guardian that Student did not need to be evaluated for special education.  Testimony of Guardian.

8.    In the fall of 2018, upon the request of Guardian, Student was evaluated by PCS for special education.  PSYCHOLOGIST 1 conducted a psycho-educational and clinical evaluation of Student with ADHD screening.  In her September 29, 2018 report,

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

Psychologist 1 reported, *inter alia*, that teachers reported that Student had been demonstrating some difficulties performing on grade level across various academic subjects, including reading, writing and math.  There were also concerns regarding Student's ability to stay on-task and sustain attention over longer periods of time, as well as concerns about Student's emotional presentation, particularly.  Psychologist 1 reported that Student demonstrated a somewhat mixed performance on the cognitive assessment.  Generally speaking, Student's performance spanned the Average/High Average ranges.  On a measure of Visual-Spatial thinking, Student performed in the Low Average range on the Visualization subtest (10th percentile).  Student demonstrated a generally solid performance on measures of his/her academic performance.  On the writing sample subtest, Student performed in the Superior range.  On reading tasks, Student performed in the Average range across tasks.  In math, Student also performed in the Average range on measures of math calculation and math problem solving abilities, indicating no concerns in those areas.  Regarding Attention Deficit-Hyperactivity Disorder (ADHD) testing, neither rater (Guardian or teacher) endorsed the presence of Clinically Significant levels of concern on the Hyperactivity or the Attention Problem indices.  The findings from the Behavior Assessment Scale for Children, BASC-3, as well as Psychologist 1's projective interview and assessment, indicated no Clinically Significant areas of concern and the projective interview did not reveal any severe underlying emotional concerns.  However, the Aggression Index and the Somatization Index for Student were both within the At-Risk range on the parent

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

rating form. Psychologist 1 recommended that further monitoring in those area would be warranted. Exhibit P-39.

9.      At a PCS multidisciplinary team (MDT) meeting on October 18, 2018, at which Guardian participated, the MDT team considered Student's special education eligibility under the Other Health Impairment (OHI) classification and determined that Student did not demonstrate a disability, did not meet OHI criteria and did not qualify for special education. Exhibits P-17, P-28. Student's teachers and Guardian agreed with the October 18, 2018 eligibility determination. Testimony of Educational Consultant.

10.     At the end of the 2018-2019 school year, Student's PCS teacher reported on the child's report card that Student met his/her end of the year goals for both literacy and math. Exhibit P-56.

11.     PCS and other District of Columbia elementary schools closed to in-person learning, beginning in March 2020, due to the COVID-19 pandemic. Hearing Officer Notice.

12.     At the end of the 2019-2020 school year, Student's PCS teacher reported on the child's report card that Student met his/her end of the year goals for both literacy and math. Exhibit P-56. That school year, Student made quite a bit of growth. Testimony of Educational Consultant.

13.     For the 2020-2021 school year, PCS offered only distance learning, that is, virtual classes, with a mix of synchronous and asynchronous (that is, on student's own

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

time) learning.  That school year because there was no in-person teaching, children in Student's grade missed out on reading and math foundational skills and Student's rate of growth declined.  Testimony of Educational Consultant.  Student's 2020-2021 end-of-year grades for reading and math were A's.  Student had 31 unexcused absences for the virtual learning year.  At the end of the third quarter, Student's promotion to the next grade was reported to be in doubt.  Exhibit P-62.  Over 1/4 of PCS' students received this promotion in doubt warning notice.  Student was promoted to the next grade at the end of the school year.  Testimony of Educational Consultant.

14.     PCS resumed offering in-person classes for the 2021-2022 school year. For the 2021-2022 school year, Student received a B in ELA, a C in math and an A in science.  Student had 8 unexcused absences.  Student's teacher reported that he/she had persevered with academic content and had improved his/her reading skill by several levels and that Student had demonstrated some growth in math across the school year. Exhibit P-65.

15.     For the 2022-2023 school year, Student received a C in ELA, a C in math and an A in science.  Student had 10 unexcused absences.  Student's ELA teacher reported that he/she had demonstrated limited proficiency on grade-level reading and writing standards in class and his/her overall grade has been negatively impacted by minimal homework completed.  On the most recent Fountas & Pinnell (F&P) reading assessment scale, Student achieved Level L, which reflected 6 levels of growth since the beginning of the year, but was still below grade level.  The math teacher reported that in

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

math, Student had performed on grade level all year.  Exhibit P-69.

16.     For the first quarter of the 2023-2024 school year, Student received a B in ELA, an F in math and an A in science.  For the second quarter, Student received a C in ELA, an F in math and an A in science.  For both quarters, Student was reported as not yet meeting grade level standards.  Exhibit P-71.

17.     On the spring 2023 PARCC assessment, the District of Columbia district-wide assessment system, Student partially met expectations for grade-level ELA learning standards.  Student scored better than 38 percent of the PCS students who took the same grade test.  For math, Student also partially met expectations for grade-level mathematics learning standards and scored better than 32 percent of the PCS students who took the test.  Exhibit P-43, P-44.

18.     On the NWEA Measures of Academic Progress (MAP) Growth tests given from fall 2019 to fall 2023,  Student's scores for Reading were as follows:

| Test Date | RIT Score | Percentile |
|---|---|---|
| Fall 2019 | 139 | 58 |
| Winter 2020 | 151 | 66 |
| Fall 2021 | 163 | 27 |
| Winter 2022 | 170 | 23 |
| Spring 2022 | 167 | 12 |
| Fall 2022 | 170 | 16 |
| Winter 2023 | 185 | 26 |
| Fall 2023 | 176 | 11 |

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

Student's NWEA MAP scores for Math were as follows:

| Test Date | RIT Score | Percentile |
|---|---|---|
| Fall 2019 | 140 | 51 |
| Winter 2020 | 149 | 46 |
| Fall 2021 | 160 | 12 |
| Winter 2022 | 169 | 12 |
| Spring 2022 | 169 | 6 |
| Fall 2022 | 170 | 9 |
| Winter 2023 | 171 | 2 |
| Fall 2023 | 181 | 10 |

Exhibit R-28.

19.     On the F&P reading assessments given in the 2021-2022, 2022-2023 and 2023-2024 school years, Student's scores were as follows:

| Date Administered | Student's Grade | F&P Level | Grade Equivalent |
|---|---|---|---|
| 10/4/21 | X | C | Kind. |
| 1/23/22 | X | D | Kind. |
| 3/30/22 | X | E | 1st |
| 6/2/22 | X | F | 1st |
| 10/19/22 | Y | I | 1st |
| 1/11/23 | Y | K | 2nd |
| 6/13/23 | Y | L | 2nd |
| 11/9/23 | Z | L | 2nd |

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

| | | | |
|---|---|---|---|
| 1/9/24 | Z | L | 2nd |
| 3/15/24 | Z | N | 3rd |

Exhibits P-41, P-42, P-79.

20.    On February 7, 2024, the Guardian made an email request to PCS' principal for Student to be evaluated to determine if he/she qualified for an Individualized Education Program (IEP).  The Guardian wrote that Student was struggling academically, socially, and functionally.   The principal responded by email the next day that PCS' Education Coordinator would take the next steps regarding Guardian's evaluation request and would be able to work with her throughout the evaluation process.  Exhibit R-15.

21.    Following an Analysis of Existing Data (AED) meeting on March 1, 2024, Student was evaluated by PSYCHOLOGIST 2 with a Psycho-Educational and Clinical Evaluation with ADHD screening.  Psychologist 2 reported that, as measured by the Wechsler Intelligence Scale for Children  Fifth Edition (WISC-V), Student's overall fell scale IQ score fell in the Very Low range (FSIQ = 70).  On the Wechsler Individual Achievement Test: Fourth Edition (WIAT-4), Student's academic functioning performance yielded a Total Achievement Composite score that was measured in the Very Low range of functioning (SS = 73).  His/Her scores on the Reading Composite (SS = 80) was measured in the Low Average range of functioning.  His/her scores on the Written Expression (SS = 72) and Mathematics (SS = 77) Composites were measured in the Very Low range of functioning.  In her April 22, 2024 report, Psychologist 2

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

reported, *inter alia*, that based upon the results of her evaluation, Student's profile appeared to be consistent with a learning disability (based upon the discrepancy model) as there was a discrepancy between achievement and measured ability of two years below his/her chronological age and/or at least 1.5 standard deviations below his/her cognitive ability in the academic areas of reading, written expression and mathematics. Based on Student's Extremely Low working memory score and the evaluator's observations, Psychologist 2 also gave Student a diagnosis (pending) of Other Specified – Attention-Deficit/Hyperactivity Disorder.  Exhibit P-40.

22.    At an MDT meeting at PCS on April 29, 2024, Student was determined eligible for special education under the primary disability, Specific Learning Disability (SLD) in math, reading and written expression, and secondary disability, Other Health Impairment (OHI).  Exhibit P-22.

23.    Student's initial IEP was developed on May 29, 2024 by the PCS IEP team. The May 29, 2024 IEP provided for Student to receive 17 hours per week of special education services, including 5 hours per week outside the general education setting. The May 29, 2024 IEP also provided for Student to receive 2 hours per month of Behavioral Support Services.  Exhibit P-4.

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

**<u>CONCLUSIONS OF LAW</u>**

Based upon the above Findings of Fact and argument of counsel, as well as this hearing officer's own legal research, my Conclusions of Law are as follows:

<u>Burden of Proof</u>

As provided in the  D.C. Special Education Student Rights Act of 2014, the party who filed for the due process hearing, the Petitioner in this case, shall bear the burden of production and the burden of persuasion, except – not applicable to this case – where there is a dispute about the appropriateness of the student's IEP or placement.  The burden of persuasion shall be met by a preponderance of the evidence.  *See* D.C. Code § 38-2571.03(6).  The Petitioner holds the burden of persuasion in this case.

<u>Analysis</u>

Did PCS deny Student a FAPE when it failed to evaluate Student for special education eligibility, beginning after the first quarter of the 2019-2020 school year, until May 2024?

The only issue in this case is whether PCS violated the IDEA's child find mandate and denied Student a FAPE by not evaluating him/her for special education eligibility after the first quarter of the 2019-2020 school year until May 2024, at which time the PCS eligibility team determined that Student met special education eligibility requirements for SLD and OHI-ADHD.

U.S. District Judge James Boasberg explained the IDEA's child find mandate in *Davis v. District of Columbia*,  244 F. Supp. 3d 27, 49 (D.D.C. 2017),

A school district must "evaluate a student who *may have* a disability and

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

who *may require* special education services." D.C. Code §
38–2561.02(a)(2) (emphases added). This duty applies to any "child
*suspected of having* a disability who may need special education." 5–E
D.C. Mun. Regs. § 3004.1(a) (emphases added)[2]; *see* 34 C.F.R. §
300.111(c)(1) (extending duty to "[c]hildren who are suspected of being a
child with a disability . . . and in need of special education, even though
they are advancing from grade to grade"). Courts in this Circuit have thus
repeatedly held that school districts are required to complete an evaluation
process "as soon as a student is identified as a potential candidate for
special education services." [*N.G. v. District of Columbia*, 556 F.Supp.2d
11, 25 (D.D.C. 2008)]*; see Horne v. Potomac Preparatory P.C.S*, No.
15-115, 209 F.Supp.3d 146, 158, 2016 WL 3962788, at *9 (D.D.C. July 20,
2016); [*Hawkins ex rel. D.C. v. District of Columbia*, 539 F.Supp.2d 108,
114 (D.D.C. 2008)].

This "affirmative obligation" does not necessarily hinge on parents' flagging
issues—though parental concerns are still relevant. *D.L. v. District of Columbia*,
109 F.Supp.3d 12, 35 (D.D.C. 2015); *see* [*Reid ex rel. Reid v. D.C.*, 401 F.3d 516,
518 (D.C. Cir. 2005)] ("School districts may not ignore disabled students' needs,
nor may they await parental demands before providing special instruction.");
*Horne*, 209 F.Supp.3d at 157, 2016 WL 3962788, at *9 (describing "affirmative
duty"); *see also Kruvant v. District of Columbia*, No. 03-1402, 2005 WL
3276300, at *7 (D.D.C. Aug. 10, 2005) ("A child may be suspected of having a
disability based on written parental concern."). The process instead begins once
the district is "on notice of substantial evidence that [the student] may have
qualified for special education . . . such that she should have been evaluated."
*N.G.*, 556 F.Supp.2d at 26.

---

[2]     Recodified in 2022 as 5a DCMR § 3003.1(a) –

Each LEA and public agency shall publish and implement child find policies and
procedures to ensure that:

(a)     All children with disabilities between the ages of three (3) and twenty-two
(22) years old enrolled in the LEA, . . .children who are suspected of being a child
with a disability even though they are making progress grade to grade, and highly
mobile children, who are in need of special education and related services, are
identified, located, and evaluated.

*Id.* (effective July 1, 2022).

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

*Davis*, 244 F. Supp. 3d at 49.  *See, also, Montuori v. District of Columbia*, No. CV 17-2455 (CKK), 2018 WL 4623572 (D.D.C. Sept. 26, 2018) ("Whether Plaintiffs asked the school for an IDEA evaluation . . . is not the relevant question. What matters is that . . . DCPS was *on notice of substantial evidence that A.M. could qualify for special education services*." *Id.* at *6. (Emphasis supplied.) The IDEA's child find obligation requires the evaluation of a child "within a reasonable time after school officials are on notice of behavior that is *likely* to indicate a disability." *Malloy v. District of Columbia*, No. 20-CV-03219 (DLF), 2022 WL 971208, at *7 (D.D.C. Mar. 30, 2022), *quoting Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 271 (3d Cir. 2012) (Emphasis supplied)).

On October 18, 2018, the PCS MDT team had determined that Student did not demonstrate a disability and did not qualify for special education. The Petitioner Guardian agreed with the 2018 eligibility determination, which is not at issue in this case. On February 7, 2024, the Guardian made a request to PCS for Student to be evaluated again for special education. On April 29, 2024, following an new initial eligibility evaluation, the PCS eligibility team found Student eligible for special education as a child with a Specific Learning Disability and an Other Health Impairment. The issue for determination now is whether, at some earlier point in time, between the fall of 2018 and February 2024, PCS was "on notice of substantial evidence" that Student could qualify for special education services. Before reaching that issue, I address PCS' statute of limitations defense.

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

<u>Statute of Limitations</u>

Petitioner's due process complaint in this case was filed on July 19, 2024.  PCS

maintains that, to the extent the Guardian alleges that PCS violated its child find duty

more than two years before the complaint filing date, her claims  are barred by the

IDEA's two-year statute of limitations.  *See* 34 C.F.R. § 300.511(e).[3]  For child find

claims under the IDEA, the statute of limitations analysis is not so straight-forward.  In

a leading decision, *Independent School District No. 283 v. E.M.D.H.*, 960 F.3d 1073

(8th Cir. 2020), the Eighth Circuit Court of Appeals reasoned that violation of the

child-find obligation "was not a single event like a decision to suspend or expel a

student" but was a continuing violation.  *Indep. Sch. Dist. No. 283*, 960 F.3d at 1083.

The Eighth Circuit concluded that  "[a]ny claim of a breach falling outside of the IDEA's

two-year statute of limitations would be untimely," but "because of the District's

continued violation of its child-find duty, at least some of the Student's claims of breach

of that duty accrued within the applicable [two-year] period of limitation."  *Id*. at

1083–84.  *See, also, White v. District of Columbia*, No. 20-CV-3821 (APM), 2022 WL

971330, at *4 (D.D.C. Mar. 31, 2022) *(citing, as inapposite, Indep. Sch. Dist. No. 283.)*

As applied to this case, the Eight Circuit's standard would mean that even though

---

[3]       *Timeline for requesting a hearing*. A parent or agency must request an impartial
hearing on their due process complaint within two years of the date the parent or agency
knew or should have known about the alleged action that forms the basis of the due
process complaint, or if the State has an explicit time limitation for requesting such a
due process hearing under this part, in the time allowed by that State law.

34 CFR § 300.511(e).

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

PCS was allegedly on notice that Student could qualify for special education as far back as the 2018-2019 school year, outside of the statute of limitations period, some of the Guardian's claims for breach of the child find duty accrued after July 19, 2022, within the two-year statute of limitations period. The statute of limitations would not bar relief for PCS' alleged continuing violations of the child find duty after July 19, 2022.[4]

I conclude that Petitioner is not barred from offering evidence that Student should have been suspected of having a disability as early as the first quarter of the 2019-2020 school year. Indeed, Guardian testified that she repeatedly asked Student's PCS teachers whether Student needed to be evaluated throughout this period. However, Petitioner's right to compensatory education relief, if any, for the alleged child find violation in this case is limited to compensating the student for harm which accrued within the two-year period of limitation, that is, on or after July 19, 2022.

---

[4]     The application of the continuing violation doctrine to the child find requirement was also recognized by the U.S. District Court in *Uhlenkamp v. District of Columbi*a, 691 F. Supp. 3d 224 (D.D.C. 2023). There, the Court held that the child find requirement is the type of continuing duty to act to which the continuing violation doctrine applies. *See id.* at 238. However, the U.S. District Court further determined that the statute of limitations for challenging the District's alleged failure to meet its child find obligations did not commence running until the District identified and evaluated the child and found the child eligible for special education services. *Id.* While I agree that the continuing violation doctrine applies, the District Court's determination that the statute of limitations only began to run after the District found the child eligible for special education services appears to conflict with the IDEA's statute of limitations provision, 20 U.S.C. § 1415(f)(3)(C) (hearing must be requested within 2 years of the "knew or should have known" date), as well as the reasoning in *Indep. Sch. Dist. No. 283* and *White*. To the extent that the *Uhlenkamp* decision holds that a parent may obtain compensatory education relief for loss of educational benefit suffered more than two years before the parent knew or should have known about the child find violation, I respectfully decline to follow that guidance.

17

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

<u>Was PCS on notice of substantial evidence that Student could qualify for special
education before February 2024?</u>

The substantive issue in this case is whether PCS violated its child find
obligations by not again evaluating Student for special education at some point after the
October 2018 eligibility decision, before receiving the Guardian's written request in
February 2024.  At the due process hearing, PCS' expert, Educational Consultant,
agreed that by February 2024, Student should have been referred for a special education
evaluation.  She based her opinion not only on the Guardian's evaluation request, but
also because by that point in time, Student appeared to be "stagnant" in math, having
received F grades for the first two quarters and he/she had experienced behavior
"spikes."  However, Educational Consultant maintained that up until that time, Student
presented as a very typical student whose learning had been impaired by the COVID
pandemic, but who had managed to recover despite the his/her challenges with school
attendance.

Petitioner called three expert witnesses, all of whom opined that Student should
have been evaluated for special education eligibility prior to February 2024.  However,
these experts' opinions were inconsistent as to when PCS was allegedly on notice that
Student could qualify for special education.  Educational Advocate 1 opined that Student
should have been evaluated in the 2020-2021 school year.  Educational Advocate 2
opined that Student should have been evaluated by the end of the 2019-2020 school
year or at the start of the 2020-2021 school year, based on the child's deficits in reading

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

writing and math. Educational Advocate 3 opined that Student should have been

evaluated at the end of the third quarter of the 2020-2021 school year, when Student's

report card warned that Student's promotion to the next grade was in doubt.

> 2028-2019 School Year

Educational Advocate 1 and Educational Advocate 2 opined that Student should

have been determined eligible for special education in 2018 based on the child's social

skills deficits. However, as noted in this decision, PCS evaluated Student for special

education in October 2018 and determined that he/she was not eligible. Petitioner

agreed with the October 2018 determination and that decision is not at issue in this

case.

> 2019-2020 School Year

PCS' expert, Educational Consultant, opined that after Student was determined

not eligible for special education in October 2018, there was no evidence that Student

should have been referred for another special education evaluation in the 2019-2020

school year. As noted, Educational Advocate 2 opined that Student should have been

evaluated at the end of the 2019-2020 school year or at the start of the 2020-2021

school year, based on the child's deficits in reading, writing and math. PCS' expert's

opinion was supported by the child's 2019-2020 report card, in which his/her teacher

reported that Student met his/her end of the year goals for both literacy and math.

Educational Consultant also testified that Student made quite a bit of growth for the

school year. On this evidence, I find that Petitioner did not meet her burden of

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

persuasion that in the 2019-2020 school year PCS was on notice of substantial evidence that Student could qualify for special education services.

2020-2021 School Year

All three of Petitioner's experts opined that Student should have been evaluated in the 2020-2021 school year, although for different reasons. Educational Advocate 1 opined that Student's accrual of 31 unexcused absences that school year indicated a need for evaluation. Educational Advocate 2 opined that Student's deficits in reading, writing and math warranted his/her having an IEP. Educational Advocate 3 opined that Student should have been evaluated in the 2020-2021 school year because Student's third quarter report card warned that the child's promotion to the next grade was in doubt.

PCS' expert, Educational Consultant, opined that there was no evidence that Student should have been referred for evaluation in the 2020-2021 school year. She pointed out that because of the COVID-19 pandemic, PCS was closed to in-person classes for the entire school year. PCS students were offered only home-based virtual instruction and the home learning environments varied greatly for different students. Educational Consultant testified that all PCS students had a dip in academics that school year. According to Educational Consultant, the "promotion in doubt" warning cited by Educational Advocate 3 went out to one-quarter of PCS' students and, as Educational Consultant explained, this indicated a need to for those children to reconnect with the school's online program rather than a special education concern. Student was promoted

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

at the end of the school year.

I found Educational Consultant's opinion more persuasive.  Student's end-of-year grades for the 2020-2021 school year were A's in reading and math.  No academic deficits were documented on the child's report card.  Because of the pandemic closings, PCS did not administer norm-based NWEA MAP assessments that year.  While Student accrued 31 unexcused absences for the virtual learning year, this was an anomaly, because after Student returned to in-person classes in fall 2021, he/she had only 8 unexcused absences for the school year.  I conclude that Petitioner did not meet her burden of persuasion that in the 2020-2021 school year, PCS was on notice of substantial evidence that Student could qualify for special education services.

2021-2022 and 2022-2023 School Years

Although Student continued to receive good class grades in the 2021-2022 and 2022-2023 school years, Student's percentile scores on norm-based NWEA MAP testing plunged.  On the MAP growth tests, Student's Reading scores fell from the 66th percentile in winter 2020 to the 23rd percentile in winter 2022.  Over the same period, the child's MAP scores for math dropped from the 46th percentile to the 12th percentile.  During this period, Student's F&P reading level scores were at least one year below grade level.  Guardian testified that throughout this period, at parent-teacher conferences, the teachers would tell her that Student was behind and when she asked if Student needed to be tested for special education, the teachers told her no.

I conclude that taken together, these "red flags," falling MAP percentiles, below

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

grade-level F&P scores, limited proficiency on reading and writing standards and, importantly, the Guardian's repeated inquiries about testing the child sufficed to put PCS on notice of substantial evidence that Student could qualify for special education. While the red flags may not have "led to interventions and classroom accommodations under the IDEA, at a minimum they provided a more than adequate basis for an evaluation, consistent with the school district's child find obligation."  *See Malloy, supra*, 2022 WL 971208, at *7.  Allowing a reasonable period for Student to readjust to in-person learning after not being physically in school from March 2020 through June 2021, I find that Petitioner has met her burden of persuasion that by the spring of 2022, PCS had sufficient indicators to indicate that Student *may* have had a disability and *may* have required special education services. I conclude, therefore, that PCS' failure to ensure that Student was evaluated for special education by the end of the 2021-2022 school year violated PCS' child find obligation.

The failure to conduct appropriate evaluations and assessments of a child with a disability is a procedural violation of the IDEA.  *See, e.g., I.T. ex rel. Renee T. v. Department of Educ.*, 2012 WL 3985686, 16 (D.Haw., Sept. 11, 2012); *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012).  Procedural violations may only be deemed a denial of FAPE if the procedural inadequacies—

(i) Impeded the child's right to a FAPE;

(ii) Significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

(iii) Caused a deprivation of educational benefit.

34 C.F.R. § 300.513(a)(2).

When Student was eventually evaluated in April 2024, it was learned that Student's cognitive measurement had declined from the Average Range when tested in 2018 to the Very Low Range when tested in 2024. Likewise, Student's educational achievement scores declined from the Average to High Average Ranges in fall 2018 to the Low Average to Very Low Ranges in spring 2024. In April 2024, Student was determined to have qualifying SLD and OHI disabilities.

Student's initial May 29, 2024 PCS IEP provided for Student to receive 17 hours per week of special education services, including 5 hours per week outside the general education setting, and 2 hours per month of Behavioral Support Services. I find it more likely than not that had Student been evaluated for special education in spring of the 2021-2022 school year, he/she would have been determined then to be a child with an IDEA disability and offered comparable IEP services. I find that PCS' failure to evaluate Student by the spring of 2022 impeded Student's right to a FAPE and therefore was a denial of FAPE.

## Remedy

For relief in this case, Petitioner asks that the child be awarded compensatory education for PCS' child find violation. When a hearing officer finds a denial of FAPE, he has "broad discretion to fashion an appropriate remedy, which can go beyond prospectively providing a FAPE, and can include compensatory education. . . . [A]n

23

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

award of compensatory education must be reasonably calculated to provide the

educational benefits that likely would have accrued from special education services the

school district should have supplied in the first place." *B.D. v. District of Columbia*, 817

F.3d 792, 797-98 (D.C. Cir. 2016) (internal quotations and citations omitted.)

> [A compensatory education] award must be based on a "'fact-specific'
> inquiry" into the " 'educational benefits that likely would have accrued [to
> the student] from special education services the school district should have
> supplied in the first place.'" *Phillips ex rel. T.P. v. District of Columbia*,
> 736 F. Supp. 2d 240, 248 (D.D.C. 2010) (*quoting* [*Reid ex rel. Reid v.
> District of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005)]. The Hearing
> Officer's analysis must be "qualitative rather than quantitative," focused
> on the student's individual needs and typical educational progress. *Mary
> McLeod Bethune Day Acad. Pub. Charter Sch. v. Bland*, 555 F. Supp. 2d
> 130, 135 (D.D.C. 2008). For that reason, this Court has rejected
> "cookie-cutter or mechanical" formulas for calculating an appropriate
> award. *Id.* (*quoting Reid*, 401 F.3d at 523–24). A "paucity" of evidence will
> also indicate that an award is not appropriately tailored to the child's
> individual needs. *Branham v. Gov't of the District of Columbia*, 427 F.3d
> 7, 11 (D.C. Cir. 2005).

*Herrion v. District of Columbia*, No. 20-CV-3470-RDM-RMM, 2022 WL 2753461, at *11

(D.D.C. Feb. 15, 2022), *report and recommendation adopted in part, rejected in part*,

No. CV 20-3470 (RDM), 2023 WL 2643881 (D.D.C. Mar. 27, 2023).

In this case, Petitioner's expert, Educational Advocate 1, prepared a written

compensatory education recommendation, which appears to offer a quantitative – not

qualitative – formula for her proposed compensatory education award.  *See* Exhibit P-

83.  This expert's recommended award includes, *inter alia*, 3.5 hours of academic

tutoring per day, multiplied by 180 days in the school year, for the 2022-2023 and

2023-2024 school years (1,260 hours total).  Unfortunately this mechanical formula is

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

unhelpful to the hearing officer.

The task for this hearing officer is to "figur[e] out both what position [the] student would be in" if PCS had evaluated Student by the end of the 2021-2022 school year and timely provided an appropriate initial IEP, and "how to get the student to that position." *See B.D., supra.* Where, as here, the Petitioner has offered some evidence as to compensatory education in the due process hearing, but that evidence is insufficient, the equitable nature of IDEA awards permits the Petitioner to present additional evidence as to appropriate compensatory relief. *See Jones v. Dist. of Columbia*, No. 115CV01505BAHGMH, 2017 WL 10651264, at *9 (D.D.C. Jan. 31, 2017), *report and recommendation adopted*, No. CV 15-1505 (BAH-GMH), 2017 WL 10651306 (D.D.C. Feb. 22, 2017). *See, also, e.g., Stanton v. Dist. of Columbia*, 680 F. Supp. 2d 201, 207 (D.D.C. 2010) (hearing officer may provide the parties additional time to supplement the record if there is insufficient evidence to support a specific award of compensatory education). PCS' Counsel also requested leave to file a compensatory education recommendation should the hearing officer find that there was a denial of FAPE, Therefore, I will permit both parties to present additional evidence as to appropriate compensatory relief for Student, informed by my findings in this interim decision. These findings include, *inter alia*, that the Student has been denied a FAPE by PCS' failure evaluate Student by spring 2022 and provide an appropriate IEP by the start of the 2022-2023 school year.

The parties may supplement the record with written submissions, preferably

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

sworn declarations from qualified professionals, as to (1) what additional or incremental *educational* benefits would likely have accrued to Student had PCS provided Student appropriate IEPs for the 2022-2023 and 2023-2024 school years and (2) what is needed now to get Student to that position. *See B.D., supra,* 817 F.3d at 799.[5]

In order to allow time for the parties to supplement the record and for the hearing officer to craft an appropriate compensatory education award, I will extend the final decision due date in this case from December 6, 2024 to January 31, 2025. *See Jones, supra,* 2017 WL 10651264, at *9 (Hearing officer may provide the parties additional time to supplement the record.)

<u>ORDER</u>

Based upon the above Findings of Fact and Conclusions of Law, it is hereby ORDERED:

1. Both parties may supplement the hearing record for the hearing officer's compensatory education determination with written submissions, as to (1) what additional or incremental educational benefits would likely have accrued to Student had PCS provided Student an appropriate IEP for the start of the 2022-2023 school year and for the 2023-2024 school year and (2) what compensatory education is needed now to get the Student to that position. The supplemental submissions must be filed in the Office of Dispute Resolution, with a copy to the hearing officer, by December 20, 2024.

2. The final decision due date for this case is extended for 55 calendar days from

---

[5]    Collaboration between parties is always a goal of the IDEA. *See, e.g., Brown v. District of Columbia*, 179 F. Supp. 3d 15, 24 (D.D.C. 2016) (The core of the IDEA is "the cooperative process that it establishes between parents and schools." *Id., quoting Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). The parties are encouraged to agree on and submit a joint compensatory education plan if practicable.

26

Case No. 2024-0135
Hearing Officer Determination
November 29, 2024

December 6, 2024 to January 30, 2025.

THIS IS NOT A FINAL DECISION.

Date:   November 29, 2024                        s/ Peter B. Vaden
                                          Peter B. Vaden, Hearing Officer

cc:    Counsel of Record
       Office of Dispute Resolution

**APPENDIX A**

**DISTRICT OF COLUMBIA**
**OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION**
Office of Dispute Resolution
1050 First Street, N.E., 3rd Floor
Washington, DC 20002

| | |
|---|---|
| ALISA JACKSON-GRAY, | ) |
| on behalf of A███████ T█████, | ) |
| | ) |
| Petitioner, | ) |
| | )      Hearing Officer:  Peter Vaden |
| v. | ) |
| | )      Case No: 2024-0135 |
| DC PREPARATORY ACADEMY | ) |
| PUBLIC CHARTER SCHOOL, | ) |
| | ) |
| Respondent. | ) |
| | ) |

HEARING OFFICER DETERMINATION
PERSONAL IDENTIFICATION INFORMATION

| | |
|---|---|
| Student | A███ T█ |
| Age | 11 years old |
| Birthday | ████████ |
| Student ID Number | ████████ |
| Petitioner - Guardian | Alisa Jackson-Gray |
| Public Charter School (PCS) | DC Preparatory Academy Public Charter School |
| Grade | 4th Grade |
| Special Education Director | Amber Slater |
| Educational Advocate 1 | Jennifer Holmes |
| Educational Advocate 2 | Jessica Williams |
| Educational Advocate 3 | Rebecca Felton |
| Educational Consultant | Michelle Hess |
| Early Leaning Center | National Children's Center |
| Psychologist 1 | Christina Tripodi Mitchell |
| Psychologist 2 | Amelia Hall |
| | |
| Petitioner's Counsel | Stephenson F.  Harvey, Jr., Esq. |
| Petitioner's Counsel | Keith L.  Howard, Esq. |
| PCS' Counsel | Lauren Baum, Esq. |

Exhibit 2

**DISTRICT OF COLUMBIA**
**OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION**
Office of Dispute Resolution
1050 First Street, NE, 3rd Floor
Washington, DC  20002

---

|  |  |  |
|---|---|---|
| GUARDIAN, on behalf of STUDENT,[1] | ) ) ) | Date Issued: December 22, 2024 |
| Petitioner, | ) ) ) | Hearing Officer: Peter B. Vaden |
| v. | ) ) | Case No: 2024-0135 |
| PUBLIC CHARTER SCHOOL | ) ) ) | Online Video Conference Hearing |
| Respondent. | ) ) ) | Hearing Dates: November 12, 13 and 15, 2024 |

---

## <u>HEARING OFFICER DETERMINATION - FINAL</u>

### <u>Background</u>

This matter came to be heard upon the Administrative Due Process Complaint Notice filed by the Petitioner (GUARDIAN) under the Individuals with Disabilities Education Act, as amended (the IDEA), 20 U.S.C. § 1400, *et seq.*, and Title 5-E, Chapter 5-E30 of the District of Columbia Municipal Regulations ("DCMR").  In her due process complaint, Petitioner alleged that STUDENT had been denied a free appropriate public education (FAPE) by the failure of Respondent PUBLIC CHARTER SCHOOL (PCS) to evaluate Student for special education eligibility from the first quarter of the 2019-2020 school year until May 2024.  Following a videoconference due process hearing on

---

[1]    Personal identification information is provided in Appendix A.

November 12, 13 and 15, 2024, this hearing officer issued an Interim Hearing Officer

Determination on November 29, 2024 (the Interim Decision).[2]

In the Interim Decision, I concluded that PCS' failure to evaluate Student for

special education eligibility by the spring of 2022 impeded Student's right to a FAPE

and therefore was a denial of FAPE. For relief, Petitioner sought an award of

compensatory education for Student. However, I found that the original compensatory

education proposal prepared by Petitioner's expert was unhelpful. In the Interim

Decision, I allowed both parties to present additional evidence as to appropriate

compensatory education relief for Student, informed by my findings in the Interim

Decision. These findings included, *inter alia*, that the Student had been denied a FAPE

by PCS' failure evaluate Student for special education eligibility by spring 2022 and

provide an appropriate IEP by the start of the 2022-2023 school year. In the Interim

Decision, I ordered:

> Both parties may supplement the hearing record for the hearing officer's
> compensatory education determination with written submissions, as to (1) what
> additional or incremental educational benefits would likely have accrued to
> Student had PCS provided Student an appropriate IEP for the start of the 2022-
> 2023 school year and for the 2023-2024 school year and (2) what compensatory
> education is needed now to get the Student to that position.

On December 20, 2024, both parties, by counsel, timely filed compensatory

education reports. Petitioner's report was formulated by EDUCATIONAL ADVOCATE

1, who also prepared the Guardian's compensatory education proposal for the original

---

[2]    For complete case background and procedural history, please refer to the Interim
Decision.

Case No. 2024-0135
Hearing Officer Determination (Final)
December 22, 2024

due process hearing and testified as an expert witness.  PCS submitted a report prepared

by EDUCATIONAL  CONSULTANT, who had also testified as an expert witness at the

due process hearing.  For compensatory education, Educational Advocate 1's updated

report on behalf of the Guardian proposes an award of 775 hours of academic tutoring

and 100 hours of counseling for Student and 24 hours of training for teachers and the

Guardian.  PCS's expert, Educational Consultant, proposed an award of 208 hours of

tutoring for reading and writing and 20 hours of counseling.   For the reasons explained

below, I adopt most of Petitioner's compensatory education proposal.

<u>Analysis</u>

In *B.D. v. District of Columbia*, 817 F.3d 792 (D.C. Cir. 2016), the D.C. Circuit

Court of Appeals pronounced that an award of compensatory education "'must be

reasonably calculated to provide the educational benefits that likely would have accrued

from special education services the school district should have supplied in the first

place.' [*Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 524 (D.C.Cir.2005)].  In

other words, compensatory education aims to put a student like B.D. in the position he

would be in absent the FAPE denial." *B.D.* at 798.  As U.S. District Judge Reggie B.

Walton explained in *Phillips ex rel. T.P. v. District of Columbia*, 736 F. Supp. 2d 240,

248 (D.D.C. 2010), the parent "has the burden of "propos[ing] a well-articulated plan

that reflects [the student's] current education abilities and needs and is supported by the

record." *Id.*  at 248, *(quoting Friendship Edison Pub. Charter Sch. Collegiate Campus*

Case No. 2024-0135
Hearing Officer Determination (Final)
December 22, 2024

*v. Nesbitt*, 583 F.Supp.2d 169, 172 (D.D.C.2008) (Facciola, Mag. J.)).  *See, also, e.g.,*

*Smith v.  District of Columbia*, No. 22-CV-2755-TSC-ZMF, 2023 WL 6291637, at *4

(D.D.C. July 31, 2023), *report and recommendation adopted,* No. 22-CV-2755

(TSC/ZMF), 2023 WL 8519987 (D.D.C. Dec. 8, 2023) (Hearing officer correctly found

that parent had the burden of proposing a compensatory education plan.)

For Student's initial May 29, 2024 IEP, the PCS IEP team determined that

Student needed 17 hours per week of special education services, including 5 hours per

week outside the general education setting.  The May 29, 2024 IEP also provided for

Student to receive 2 hours per month of Behavioral Support Services.  Assuming

Student would have been offered comparable services if he/she had been provided IEPs

for the 2022-2023 and 2023-2024 school years, Student missed out on some 1,224

hours of Specialized Instruction and 144 hours of Behavioral Support Services over the

two school years.

In the Interim Decision, I invited the parties to address two questions:

1.      What additional or incremental educational benefits would likely have
accrued to Student had PCS provided Student an appropriate IEP for the start of
the 2022-2023 school year and for the 2023-2024 school year?

2.      What compensatory education is needed now to get the Student to that
position?

In her compensatory education report, PCS' expert, Educational Consultant,

wrote, *inter alia*, that:

– Student's rate of growth varied across content areas between Spring 2022 and

Case No. 2024-0135
Hearing Officer Determination (Final)
December 22, 2024

Fall 2024.

– Overall, Student made appropriate progress in Math compared to his/her same grade level peers according to NWEA MAP.

– In reading, Student made appropriate progress on one indicator (F&P) but lagged behind his/her peers on another indicator (NWEA MAP) by about 27%.

Educational Consultant opined that to bridge the gap for the progress that Student would have made with special education services provided for the 2022-2023 and 2023-2024 school years, appropriate compensatory education services for Student would be 208 total hours of tutoring to support foundational reading and writing skills and 20 total hours of counseling to support self-regulation skills. She opined that no compensatory services were needed for math because Student had made commensurate progress in that subject as his/her same-aged peers.

The problem with Educational Consultant's analysis is that while she considers the progress Student allegedly made without special education, she does not address what *additional* progress the child might have made with an appropriate IEP. *See B.D., supra*, 817 F.3d at 798 (D.C. Cir. 2016) ("To fully compensate a student, the award must seek not only to undo the FAPE denial's affirmative harm, but also to compensate for lost progress that the student would have made." *Id.*) For that reason, I decline to follow Educational Consultant's recommendation.

For her updated compensatory education proposal, Petitioner's expert, Educational Advocate 1, proposed a plan to close the "detrimental gap between

Case No. 2024-0135
Hearing Officer Determination (Final)
December 22, 2024

[Student's] skill level and where [he/she] should be performing." She looked at Student's current deficits, as reported in the April 2024 psychological evaluation, in foundational reading skills, including vocabulary and word reading, in spelling and sentence composition and essay composition and in math. Her updated compensatory education proposal is that Student be awarded 775 total hours of academic tutoring and 100 hours of counseling, along with 24 hours of training for Student's teachers and the Guardian.

What is missing from Educational Advocate 1's report is a projection of what position Student would be in now absent the FAPE denial – that is, where would Student be now if PCS had provided appropriate IEPs for 2022-2023 and 2023-2024 school years? *See Butler v. District of Columbia*, 275 F. Supp. 3d 1, 6 (D.D.C. 2017). However, perfection is not required for compensatory education analysis. *See Cousins v. District of Columbia*, 880 F.Supp.2d 142, 148 (D.D.C.2012) (Petitioner is not required "to have a perfect case to be entitled to compensatory education.") I find that Educational Advocate 1's proposal for 775 hours of compensatory education tutoring is reasonably calculated to provide the educational benefits that Student would likely have received, had PCS provided IEPs for the 2022-2023 and 2023-2024 school years. *See Reid, supra*, 401 F.3d at 524.

With regard to Behavioral Support Services, these are IEP related services which are provided "as are required to assist a child with a disability to benefit from special

6

Case No. 2024-0135
Hearing Officer Determination (Final)
December 22, 2024

education." *See* 34 C.F.R. § 300.34(a).  Educational Advocate 1 submitted that had

Student received counseling services during the 2022-2023 and 2023-2024 school

years, he/she would have had more success attending to academic instruction in the

classroom setting.  While that may be the case, Student will be "compensated" for the

alleged gap in his/her academic instruction by the provision of compensatory education

tutoring.  Student's May 29, 2024 IEP provides for 2 hours per month of Behavioral

Support Services.  Petitioner has not shown that additional counseling or training for

teachers or the Guardian is needed to assist Student to benefit from special education or

to get Student to the position he/she would be in absent the denial of FAPE.  Therefore,

I decline to award compensatory counseling or training services.

<u>ORDER</u>

        As compensatory education for the denial of FAPE found in the Interim Decision,

the hearing officer orders PCS to promptly issue funding authorization to the Guardian

to obtain 775 hours of 1:1 academic tutoring for Student by a qualified tutor.  The

methodology and content of the compensatory education tutoring and shall be left to the

reasonable discretion of the professional provider with due consideration of the input of

the Guardian and Student's educators.  All other relief requested by the Petitioner

herein is denied.

Case No. 2024-0135
Hearing Officer Determination (Final)
December 22, 2024

SO ORDERED.


Date:   December 22, 2024            s/ Peter B. Vaden
                                     Peter B. Vaden, Hearing Officer



**NOTICE OF RIGHT TO APPEAL**

This is the final administrative decision in this matter.  Any party aggrieved by this Hearing Officer Determination may bring a civil action in any state court of competent jurisdiction or in a District Court of the United States without regard to the amount in controversy within ninety (90) days from the date of the Hearing Officer Determination in accordance with 20 U.S.C. § 1415(i).


cc:    Counsel of Record
       Office of Dispute Resolution

## APPENDIX A

**DISTRICT OF COLUMBIA**
**OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION**
Office of Dispute Resolution
1050 First Street, N.E., 3rd Floor
Washington, DC 20002

| | | |
|---|---|---|
| ALISA JACKSON-GRAY, | ) | |
| on behalf of A███████ T█████, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Hearing Officer: Peter Vaden |
| v. | ) | |
| | ) | Case No: 2024-0135 |
| DC PREPARATORY ACADEMY | ) | |
| PUBLIC CHARTER SCHOOL, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

HEARING OFFICER DETERMINATION
PERSONAL IDENTIFICATION INFORMATION

| Student | A███ T███ |
|---|---|
| Age | 11 years old |
| Birthday | ██████████ |
| Student ID Number | █████████ |
| Petitioner - Guardian | Alisa Jackson-Gray |
| Public Charter School (PCS) | DC Preparatory Academy Public Charter School |
| Grade | 4th Grade |
| Special Education Director | Amber Slater |
| Educational Advocate 1 | Jennifer Holmes |
| Educational Advocate 2 | Jessica Williams |
| Educational Advocate 3 | Rebecca Felton |
| Educational Consultant | Michelle Hess |
| Early Leaning Center | National Children's Center |
| Psychologist 1 | Christina Tripodi Mitchell |
| Psychologist 2 | Amelia Hall |
| | |
| Petitioner's Counsel 1 | Stephenson F. Harvey, Jr., Esq. |
| Petitioner's Counsel 2 | Keith L. Howard, Esq. |
| PCS' Counsel | Lauren Baum, Esq. |